104 So.2d 404 (1958)
NEIL L. HUMPHRYS and Mildred B. Humphrys, husband and wife, Appellants,
v.
Lee JARRELL and G.M.T. Jenks, Appellees.
No. 76.
District Court of Appeal of Florida. Second District.
July 16, 1958.
*406 John T. Baron, Titusville, and Shepard & Dykes, Cocoa, for appellants.
Robert Godbey, Cocoa, and Crofton, Wilson & Brewer, Titusville, for appellees.
KANNER, Chief Judge.
This appeal has its source in a summary final decree entered by the chancellor in the trial court ordering as the result of a suit for specific performance that appellants as the sellers execute and deliver a conveyance of certain lands to appellees as the purchasers in compliance with their contract to sell and ordering appellees to pay the purchase price agreed upon.
A review of the case reveals that the record consists of the pleadings, the affidavits, the contract, a copy of a letter agreement, and a copy of two letters concerning an escrow arrangement. On December 20, 1955, appellants entered into a contract to sell to appellees the property involved in this controversy. The purchase price stipulated by the contract was $165 per acre, the quantity of land was 53.731 acres. The pertinent provisions of the contract are as follows:
"The purchase price is to be paid in the following manner, $500 at the time of the execution of this Agreement by the sellers. The balance or remainder to be paid within 30 days after the buyers receive compensation of certain land in Brevard County which is being sold to the United States Government; but in any event this Agreement shall expire January 1, 1957; The deferred payments shall bear interest at the rate of 6% per annum from the date of the execution of this instrument, which interest shall be payable semi-annually. * * *

"The sellers shall furnish to the buyers, upon demand, an Abstract of Title showing a good and merchantable title in the sellers. The purchasers shall have 30 days from the time such Abstract is furnished to examine the same by their attorney and should any defect of title be found, the sellers shall have 30 days from the time such defects are called to their attention to correct them." (Emphasis supplied.)
The down payment was made; on June 19, 1956, and on January 6, 1957, respectively, interest payments were made.
In December of 1956, appellee Jarrell instructed his attorney to obtain the abstract of title and make an examination of it. The attorney made the request for the abstract in December, 1956, received and examined it, and on December 17, 1956, he reported to appellee Jarrell that in his opinion the title was not "good and merchantable". The appellants were not informed that it was the attorney's opinion that the title was unmarketable until sometime in the early part of January, 1957.
On January 11, 1957, appellants and appellee Jarrel entered into a letter agreement, the body of which reads as follows:
"This letter is concerning our oral conversation just concluded. In this conversation we discussed the title to the tract of land in Section 14, Township 24 S, Range 36 E; which land we have contracted to convey to you and the time for such conveyance has arrived, the time, terms and conditions of the transaction including the date of closing is more specifically set out in that certain agreement between us dated December 20, 1955, which agreement was executed by us and by you and by reference is made a part of this letter.
"The Abstract of Title showing the title to the described real property does not show a good marketable title and it is necessary that a suit to quiet this title be instituted and carried to a conclusion. It is therefore agreed in consideration of the above premises that you, Lee Jarrell, are to attend to the suit for quieting title which will be instituted and prosecuted *407 by Robert Godbey, Attorney, as promptly as possible. Lee Jarrell to pay the costs and attorneys fees incident to quieting the title and we, the undersigned, hereby waive all interest and claims for interest on the purchase price remaining to be paid as of this date."
The letter agreement was signed by Jarrell but not by Jenks, a party to the original agreement and a successful party in obtaining the decree for specific performance of the contract.
On March 11, 1957, appellants informed the attorney that, nothing having been done about the suit to quiet title, they were not "waiting another day". They then obtained the advice of another attorney who informed them that the title to the property was marketable. Appellants thereupon and because of the claimed delay refused to proceed with the sale.
On March 27, 1957, appellees entered suit for specific performance, and on April 20, 1957, an escrow arrangement was made by them for payment of the purchase price, contingent upon delivery of a good deed of conveyance by appellants.
From the time of the preparation of the contract, the contract being dated December 20, 1955, until March 11, 1957, the negotiations were handled through one attorney. He was the attorney for appellees and acted also for the appellants who had no other legal counsel to advise them until they had notified him that the deal was off. Appellants relied on the attorney who was representing the appellees and the appellants at the same time.
The foregoing recital or summary of facts is substantially without dispute. This is not so as to other phases of the negotiations and of the factual situation upon which appellants based their decision not to consummate the sale.
The appellant in their affidavit resisting the motion for summary decree declared that they postponed the termination of the contract because they relied on the statements of the attorney and on his opinion that the property bore no marketable title, and that the supplementary letter agreement was not written at their suggestion but at the suggestion of the appellee Jarrell in the offices of the attorney. Contrarily, the affidavit of the attorney sets forth that in his opinion there were "matters that clouded the title". By their answer and affidavit, appellants have created the issue of the marketability of the title, particularly as it relates to the letter agreement and the reason for its making and execution.
There is also some disagreement as to the extent and the characteristics of the negotiations between January 11, 1957, the date of the letter agreement's execution, and the time of appellants' announced intention not to complete the sale. Generally, in this respect, it can be said that appellants' affidavit reveals inaction with reference to the bringing of the suit to quiet title and further shows a deterioration of affairs as a result, which thereby induced appellants' refusal to go ahead with the contract. On the other hand, generally, the affidavits of the appellee Jarrell and of the attorney who handled the matter for the parties to the time of the breaking off indicate that diligence was being exercised toward the institution of the quiet title suit, and that appellants repudiated the contract without cause.
30 F.S.A. Rule 1.36 of the Florida Rules of Civil Procedure, 1954, sets forth the provisions and prescribes the proceeding for summary judgment or decree:
1.36(a)
"For Claimant. A party seeking to recover upon a claim, counterclaim or cross-claim or to obtain a declaratory judgment or decree may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment or decree by the adverse party, *408 move with or without supporting affidavits for a summary judgment or decree in his favor upon all or any part thereof."
1.36(c)
"Motion and Proceedings Thereon. The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment or decree sought shall be rendered forthwith if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law. * * *"
1.36(e)
"Form of Affidavits; Further Testimony. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated herein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits."
Summary judgment or decree is permissible only where the pleadings, depositions, or admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the movant is entitled to judgment or decree as a matter of law. The burden of proof is upon the party moving for summary judgment or decree to show lack of a genuine issue of material fact, and all doubts as to the existence of such fact must be resolved against the movant. On failure to show such lack of a genuine issue of material fact, or if a genuine issue of material fact otherwise appears, movant's motion must be denied. It follows that summary proceedings may be used only as a vehicle for establishing whether there is a genuine issue of material fact to be determined, and the trial court may not try or determine factual issues in such proceedings. If it is disclosed that there does exist a genuine issue of material fact, the judgment or decree may not be entered. If salient facts are established beyond dispute, question then arises whether one party or the other party should be awarded judgment or decree as a matter of law, and that question is to be decided by the trial judge using the established facts as a premise. Caution and discernment should go hand in hand where the power to enter summary judgment or decree is exercised, for such a power wields a dangerous potential which could have the effect of trespass against fundamental and traditional processes for determining the rights of litigants. See Shaffran v. Holness, Fla. 1957, 93 So.2d 94; Jones v. Stoutenburgh, Fla. 1956, 91 So.2d 299; Manning v. Clark, Fla. 1954, 71 So.2d 508; and Johnson v. Studstill, Fla. 1954, 71 So.2d 251.
The contract specified that the sellers were to furnish an abstract of title to the purchasers upon demand and that the purchasers were required to notify the sellers of any defect in the title which the examination disclosed; and the contract expressly provided that it should expire in any event on January 1, 1957. It has been indisputably shown that there was no demand for an abstract until December, 1956, less than a month prior to the contract's expiration date. Appellants as the sellers were not apprised of the attorney's opinion that the title was non-marketable until after the contract date had expired. In their affidavit appellants assert that the question of the title's marketability was the reason for not consummating the sale; and this thereupon gave rise to and motivated the execution of the supplemental letter agreement of January 11, 1957.
*409 In view of the foregoing factual situation, it is adequately clear that the question of the marketability of the title is a core question and one which is vital to the determination of the cause. The affidavit of the attorney indicates that in his opinion the title was defective. Issue was taken upon this both by appellants' answer and by their affidavit. The contract provides that "should any defect of title be found, the sellers shall have thirty days from the time such defects are called to their attention to correct it". (Emphasis supplied.) Nowhere in the entire record is there revealed directly or impliedly that the sellers were advised what the particular defects were upon which the attorney based his opinion that the title was not good and merchantable. The indication of the attorney was only the flat statement to the effect that the title was not marketable or that it was clouded. A statement of this character constitutes only a conclusion of law.
It has been indicated that there was conflict as to who instigated the supplemental letter agreement and its execution. The fact is patent that in this regard appellants were acting upon the assurance and advice of the same attorney who was representing appellees and who continued to represent appellees after dissension between the parties had commenced. Neither the attorney in his affidavits nor the appellee Jarrell denied that the attorney was also representing the appellants until their refusal to conclude the contract. In view of the dispute as to marketability of the title, the circumstances surrounding execution of this letter agreement and the reasons for its execution appear to be worthy of further exploration, for there would be no valid reason for the execution of the letter agreement if the attorney was mistaken in his opinion that the title was materially defective.
Questions as to the sufficiency and form of affidavits filed have been raised. The appellees contend that the affidavit filed by appellants does not meet the requirements of Rule 1.36(e) relating to form of affidavits for summary judgment or decree. This is true. Parts of appellants' affidavit are hearsay and do not appear to be founded on personal knowledge. Conversely, an examination of the affidavits filed by appellees reveals them to be afflicted with similar vices in that these affidavits contain statements of opinion and statements of the substance of the written contract and letter agreement and of the appellees' interpretations and conclusions of law as to these instruments. This, too, does not meet the requirements of the rule. See Walling v. Fairmont Creamery Co., 8 Cir., 1943, 139 F.2d 318. Thus portions of the affidavits of both parties might well have been stricken on motion, but it appears that these matters were not raised before the chancellor. The affidavits should set forth facts which would be admissible at trial, though every statement need not meet this test. Where an affidavit contains incompetent and inadmissible matter, such as hearsay testimony and opinion testimony and legal conclusions that would not be admissible if testified to at a trial, the whole affidavit should not be disregarded, but the court should disregard the incompetent and inadmissible matter and give consideration to the competent and admissible portions. See Dickheiser v. Pennsylvania R. Co., D.C. 1945, 5 F.R.D. 5; and Moore's Federal Practice, 2nd ed., Vol. 6, pp. 2327-2329.
Appellants have raised a question as to an affidavit of the attorney filed on behalf of appellees, asserting that this affidavit is without a certificate of service and that it was not served on them. Appellees contend that the question was never presented in the court below. This particular affidavit of the attorney was filed before the court on the same day summary decree was rendered. Nothing indicates whether the affidavit was filed pursuant to the court's permission under Rule 1.36(e) to supplement a prior affidavit, and so it would appear ordinarily that this affidavit was not timely filed. See Cleveland Trust Co. v. Foster, Fla. 1957, 93 So.2d 112. However, appellees point out that this question *410 was not raised before the chancellor, nor properly presented by assignment of error on the appeal. This contention of appellees is sustained by many cases. See Dicks v. Colonial Finance Corporation, Fla. 1956, 85 So.2d 874; Redditt v. State, Fla. 1955, 84 So.2d 317; City of Coral Gables v. State, Fla. 1948, 38 So.2d 467; and 31 F.S.A. Rule 3.5, subd. c, Florida Appellate Rules.
The case here is one of specific performance. Specific performance is an equitable remedy and is not granted as a matter of right or grace but as a matter of sound judicial discretion vested in the chancellor governed by principles of law and equity applicable to the particular facts or circumstances. The exercise of this discretion by the chancellor must be legally sound and not arbitrary. Moreover, the granting of a final decree in a specific performance suit requires that the proof be clear, competent, and satisfactory. This test imposes a greater degree of proof than that required under the preponderance of evidence rule. See Topper v. Alcazar Operating Co., 1948, 160 Fla. 421, 35 So.2d 392; Todd v. Hyzer, 1944, 154 Fla. 702, 18 So.2d 888; Williams v. Neeld-Gordon Co., 1923, 86 Fla. 59, 97 So. 315; and Miller v. Murray, Fla. 1953, 68 So.2d 594.
Beyond and above the principles and rules hereinbefore stated, generally the courts hold the moving party for summary judgment or decree to a strict standard and the papers supporting his position are closely scrutinized, while the papers opposing are leniently treated in determining whether the movant has satisfied the burden required of him. Moore's Federal Practice, 2nd ed., Vol. 6, p. 2336 and p. 2339. In determining the existence of a genuine issue of material fact, all inferences of fact from the proofs proffered at the hearing must be drawn by the trial court against the movant and in favor of the party opposing the motion. Moore's Federal Practice, 2nd ed., Vol. 6, p. 2125. Likewise, an appellate court should indulge all proper inferences in favor of the party against whom a summary judgment or decree has been requested. See Delany v. Breeding's Homestead Drug Co., Fla. 1957, 93 So.2d 116; and Pritchard v. Peppercorn and Peppercorn, Inc., Fla. 1957, 96 So.2d 769.
The summary final decree ordered that the appellants execute a good and sufficient deed of conveyance without restrictions or encumbrances, conveying to appellees in fee simple the property involved. So it may be concluded that the valid parts of the affidavits of the parties which could properly have been considered by the court, when considered with the other portions of the record, establish a genuine issue of material fact so as to preclude summary decree, in consequence of which the decree of specific performance was erroneously entered. Even assuming that the affidavit of appellants is insufficient to create an issue on the marketability of the title or otherwise, the affidavits of appellees are also so deficient as to preclude entry of a summary decree. The cause must therefore be reversed. It is hereby remanded for further proceedings not inconsistent with or contrary to the views expressed.
Reversed.
ALLEN and SHANNON, JJ., concur.